**IN THE CIRCUIT COURT OF THE TWENTIETH JUDICIAL CIRCUIT**
**IN AND FOR COLLIER COUNTY, FLORIDA**
**CIVIL ACTION**

**SUZANNE MANNINA and ANTONIO MANNINA,**

**Plaintiffs,** **CASE NO.:**

**v.**

**RACK ROOM SHOES, INC., GGP SERVICES INC. f/k/a BROOKFIELD PROPERTIES RETAIL INC., and GENERAL GROWTH MANAGEMENT, INC.,**

**Defendants.**
_________________________________________ /

## COMPLAINT AND DEMAND FOR JURY TRIAL

COME NOW the Plaintiffs, SUZANNE MANNINA and ANTONIO MANNINA, (hereinafter "Plaintiffs") by and through undersigned counsel, and hereby sue Defendants, RACK ROOM SHOES, INC., GGP SERVICES INC. f/k/a BROOKFIELD PROPERTIES RETAIL INC., and GENERAL GROWTH MANAGEMENT, INC., (hereinafter "Defendants"), and allege:

## JURISDICTION AND PARTIES

1. This is an action for damages that exceeds Fifty Thousand Dollars ($50,000.00), exclusive of interest, costs, and attorneys' fees.
2. At all times material hereto, Plaintiff, SUZANNE MANNINA (hereinafter "MRS. MANNINA"), was sui juris and a resident of Ontario, Canada who on the date of the incident giving rise to this complaint, was visiting Naples, Florida on vacation with her family.



FILED: COLLIER COUNTY, CRYSTAL K. KINZEL, CLERK, 07/30/2026 04:56:33 PM

3. At all times material hereto, Plaintiff, ANTONIO MANNINA (hereinafter "MR. MANNINA"), was sui juris and a resident of Ontario, Canada, who on the date of the incident giving rise to this complaint, was visiting Naples, Florida on vacation with his wife, SUZANNE MANNINA, and family.
4. At all times material hereto, Defendant, RACK ROOM SHOES, INC. (hereinafter "RACK ROOM SHOES"), was a foreign profit corporation authorized to do business in Florida, and in fact doing business in Collier County, Florida.
5. At all times material hereto, Defendant, GGP SERVICES INC. f/k/a BROOKFIELD PROPERTIES RETAIL INC. (hereinafter "GGP"), was a foreign profit corporation authorized to do business in Florida, and in fact doing business in Collier County, Florida.
6. At all times material hereto, Defendant, GENERAL GROWTH MANAGEMENT, INC. (hereinafter "GENERAL"), was a foreign profit corporation authorized to do business in Florida, and in fact doing business in Collier County, Florida.
7. Venue is proper in Collier County, Florida, because the acts that give rise to this complaint occurred in this county.

**GENERAL ALLEGATIONS**

8. At all times material hereto, RACK ROOM SHOES leased, owned, operated, maintained, and/or controlled a retail store (hereinafter referred to as "the Premises") located inside the Coastland Center Shopping Mall located at 1900 Tamiami Trail N, Naples, FL 34102, in Collier County, Florida (hereinafter referred to as "the Mall").
9. At all times material hereto, GGP owned, operated, managed, and/or maintained the Mall.
10. At all times material hereto, GENERAL owned, operated, managed, and/or maintained the Mall.

11. On or about August 04, 2024, MRS. MANNINA, was visiting the Premises in the Mall owned and/or operated by Defendants for the purpose of shopping for new shoes.
12. On or about that time, MRS. MANNINA was shopping in an area open to customers when a piece of damaged ceiling tile fell, without warning, and struck her about her head and body. As a result, MRS. MANNINA suffered serious injuries, including a traumatic brain injury, concussion, persistent post-concussive symptoms, chronic headaches and migraines, dizziness, light sensitivity, cognitive impairment, and related sequelae.
13. On or about the above date and time, MRS. MANNINA, was a business invitee, lawfully on the Premises.

**COUNT I: SUZANNE MANNINA'S NEGLIGENCE CLAIM AGAINST DEFENDANT RACK ROOM SHOES, INC.**

MRS. MANNINA hereby repeats and realleges the allegations contained in paragraphs one (1) through thirteen (13) above, incorporates them as if set forth fully herein, and further alleges:

14. At all times material hereto, RACK ROOM SHOES owned, operated, maintained, managed, and/or controlled the Premises as a retail shoe store open to the general public, including business invitees such as MRS. MANNINA.
15. RACK ROOM SHOES owed MRS. MANNINA, as a business invitee, a duty to maintain the Premises in a reasonably safe condition and to correct or warn of any known dangerous conditions.
16. RACK ROOM SHOES negligently maintained the Premises, by failing to use reasonable care in keeping the Premises in a reasonably safe condition that would prevent it from being dangerous and unsafe for business invitees like MRS. MANNINA.
17. At all relevant times, the store ceiling, and specifically, the damaged ceiling tile constituted a dangerous and hazardous condition.

18. This negligent condition referenced above was known to RACK ROOM SHOES or had existed for a sufficient length of time so that RACK ROOM SHOES should have known of it.

19. RACK ROOM SHOES breached its duty of care to MRS. MANNINA by failing to do one or more of the following, without limitation:

    a. To use ordinary care and diligence to maintain the Premises in a condition reasonably safe for its intended use and free from all defects and conditions which would render it dangerous and unsafe to MRS. MANNINA or present an unreasonable risk of harm to her;

    b. To exercise reasonable care to protect MRS. MANNINA from any dangerous conditions by inspecting and/or using any other means to create a safe environment on and about the Premises;

    c. To properly warn MRS. MANNINA of any dangerous or unsafe conditions existing on or about the Premises;

    d. To install any barriers blocking customer access to any areas known to be dangerous or unsafe;

    e. To properly hire, train and supervise its agents, servants and employees, to assure the prompt removal of hazards, and other dangerous conditions at the Premises, and to adequately and timely warn invitees, such as MRS. MANNINA of that condition;

    f. To correct dangerous ongoing conditions such as the one at issue in this case.

20. As a direct and proximate result of RACK ROOM SHOES's negligent acts or omissions, MRS. MANNINA suffered bodily injury, resulting in great physical pain and suffering, disability, disfigurement, scarring, inability and loss of the capacity to lead and enjoy a

normal life, loss of or diminution of earnings or earning capacity, expense of hospitalization, medical and nursing care and treatment, aggravation of an existing disease or physical defect, permanent injury within a reasonable degree of medical probability, medical and related expenses in the past and in the future incurred in seeking a cure for her injuries. The losses are either permanent or continuing and MRS. MANNINA will suffer them in the future.

WHEREFORE, the Plaintiff, SUZANNE MANNINA, demands judgment for damages and costs against Defendant, RACK ROOM SHOES, INC., plus any additional relief this Court may deem just and proper.

**COUNT II – SUZANNE MANNINA'S NEGLIGENT MODE OF OPERATION CLAIM AGAINST DEFENDANT RACK ROOM SHOES, INC.**

MRS. MANNINA hereby repeats and realleges the allegations contained in paragraphs one (1) through thirteen (13) above, incorporates them as if set forth fully herein, and further alleges:

21. At all times material hereto, RACK ROOM SHOES owned, operated, maintained, managed, and/or controlled the Premises as a retail shoe store open to the general public, including business invitees such as MRS. MANNINA.
22. RACK ROOM SHOES owed a duty to MRS. MANNINA to operate its business such that it was free from any unsafe conditions.
23. However, RACK ROOM SHOES breached its duties in the way that it operated its business, in multiple respects, including, without limitation by:
    a. operating beneath an HVAC system with a known and recurring leaking air-conditioner;
    b. failing to repair or replace water-damaged ceiling tiles known to deteriorate and fall;

c. continuing to permit customer traffic in areas beneath compromised ceiling tiles without inspection, barrier, or warning;

d. failing to implement reasonable inspection, maintenance, and warning procedures despite recurring incidents of falling ceiling tiles.

e. Failing to require correction of known hazardous conditions affecting its business invitees.

24. RACK ROOM SHOES' mode of operation was negligent in that it created a foreseeable and recurring zone of risk to business invitees, including MRS. MANNINA, of injury from falling damaged ceiling tiles caused by chronic HVAC leaks within the property under RACK ROOM SHOES' control.

25. Further, RACK ROOM SHOES had a duty of care which required it to take reasonable precautions to minimize or eliminate the likelihood of a dangerous condition arising in the first instance.

26. RACK ROOM SHOES operated its business in a manner that created a dangerous or unsafe condition by failing to take such precautions or by failing to ensure that any precautions taken were adequately and appropriately followed by itself and its staff.

27. RACK ROOM SHOES knew or should have known that its mode of operation made the occurrence of injuries from water-damaged ceiling tiles falling upon customers reasonably foreseeable, yet it failed to take reasonable corrective action, failed to alter its mode of operation, and failed to warn invitees of the recurring danger.

28. As a direct and proximate result of RACK ROOM SHOES' negligent mode of operation, MRS. MANNINA suffered bodily injury, resulting in great physical pain and suffering, disability, disfigurement, scarring, inability and loss of the capacity to lead and enjoy a

normal life, loss of or diminution of earnings or earning capacity, expense of hospitalization, medical and nursing care and treatment, aggravation of an existing disease or physical defect, permanent injury within a reasonable degree of medical probability, medical and related expenses in the past and in the future incurred in seeking a cure for her injuries. The losses are either permanent or continuing and MRS. MANNINA will suffer them in the future.

WHEREFORE, the Plaintiff, SUZANNE MANNINA, demands judgment for damages and costs against Defendant, RACK ROOM SHOES, INC., plus any additional relief this Court may deem just and proper.

**COUNT III – ANTONIO MANNINA'S LOSS OF CONSORTIUM CLAIM AGAINST DEFENDANT, RACK ROOM SHOES, INC.**

MR. MANNINA, hereby repeats and realleges the allegations contained in paragraphs one (1) through thirteen (13) above, incorporates them as if set forth fully herein, and further alleges:

29. At all times material hereto, MR. MANNINA, was legally married to the plaintiff, SUZANNE MANNINA, and was entitled to the services, society, companionship, comfort, consortium, affection, and support of his wife.

30. As a direct and proximate result of the negligence of RACK ROOM SHOES as more fully described in the preceding paragraphs, MRS. MANNINA, suffered serious injuries, including a traumatic brain injury, concussion, persistent post-concussive symptoms, chronic headaches and migraines, dizziness, light sensitivity, cognitive impairment, and related sequelae.

31. As a further direct and proximate result of RACK ROOM SHOE's negligence and the injuries sustained by his wife, MR. MANNINA, has been deprived, and will continue to

be deprived, of her services, society, companionship, comfort, consortium, affection, sexual relations, and support.

32. As a further direct and proximate result of Defendants' negligence, MR. MANNINA, has incurred and will continue to incur expenses in connection with his wife's medical care and treatment, and has been required to assume additional responsibilities in the care of their household and their two minor children, whose care and upbringing had previously been shared with his wife.

33. The losses suffered by MR. MANNINA, are either permanent or continuing in nature, and he will continue to suffer such losses in the future.

WHEREFORE, Plaintiff, ANTONIO MANNINA, demands judgment for damages and costs against Defendant, RACK ROOM SHOES, INC., plus any additional relief this Court may deem just and proper.

**COUNT IV – SUZANNE MANNINA'S NEGLIGENCE CLAIM AGAINST DEFENDANT GGP SERVICES INC. f/k/a BROOKFIELD PROPERTIES RETAIL INC.**

MRS. MANNINA hereby repeats and realleges the allegations contained in paragraphs one (1) through thirteen (13) above, incorporates them as if set forth fully herein, and further alleges:

34. At all times material hereto, GGP owned, operated managed, and/or maintained the Mall including the structural components, common areas, ceiling assemblies, and HVAC systems serving the retail tenant spaces within the Mall, including the Premises.

35. GGP owed MRS. MANNINA, as a business invitee, a duty to maintain the Premises in a reasonably safe condition and to correct or warn of any known dangerous conditions.

36. GGP negligently maintained the Premises, by failing to use reasonable care in keeping the Premises in a reasonably safe condition that would prevent it from being dangerous

and unsafe for business invitees like MRS. MANNINA.

37. At all relevant times, the store ceiling, and specifically, the damaged ceiling tile constituted a dangerous and hazardous condition.

38. This negligent condition referenced above was known to GGP or had existed for a sufficient length of time so that GGP should have known of it.

39. GGP breached its duty of care to MRS. MANNINA by failing to do one or more of the following, without limitation:

    a. To use ordinary care and diligence to maintain the Premises in a condition reasonably safe for its intended use and free from all defects and conditions which would render it dangerous and unsafe to MRS. MANNINA or present an unreasonable risk of harm to her;

    b. To exercise reasonable care to protect MRS. MANNINA from any dangerous conditions by inspecting and/or using any other means to create a safe environment on and about the Premises;

    c. To properly warn MRS. MANNINA of any dangerous or unsafe conditions existing on or about the Premises;

    d. To install any barriers blocking customer access to any areas known to be dangerous or unsafe;

    e. To properly hire, train and supervise its agents, tenants, servants and employees, to assure the prompt removal of hazards, and other dangerous conditions at the Premises, and to adequately and timely warn invitees, such as MRS. MANNINA of that condition;

    f. To correct dangerous ongoing conditions such as the one at issue in this case.

40. As a direct and proximate result of GGP's negligent acts or omissions, MRS. MANNINA suffered bodily injury, resulting in great physical pain and suffering, disability, disfigurement, scarring, inability and loss of the capacity to lead and enjoy a normal life, loss of or diminution of earnings or earning capacity, expense of hospitalization, medical and nursing care and treatment, aggravation of an existing disease or physical defect, permanent injury within a reasonable degree of medical probability, medical and related expenses in the past and in the future incurred in seeking a cure for her injuries. The losses are either permanent or continuing and MRS. MANNINA will suffer them in the future.

WHEREFORE, the Plaintiff, SUZANNE MANNINA, demands judgment for damages and costs against Defendant, GGP SERVICES INC. f/k/a BROOKFIELD PROPERTIES RETAIL INC., plus any additional relief this Court may deem just and proper.

**COUNT V – SUZANNE MANNINA'S NEGLIGENT MODE OF OPERATION CLAIM AGAINST DEFENDANT GGP SERVICES INC. f/k/a BROOKFIELD PROPERTIES RETAIL INC.**

MRS. MANNINA hereby repeats and realleges the allegations contained in paragraphs one (1) through thirteen (13) above, incorporates them as if set forth fully herein, and further alleges:

41. At all times material hereto, GGP owned, operated, managed, and/or controlled the Mall including the structural components, common areas, ceiling assemblies, and HVAC systems serving the retail tenant spaces, including the Premises.

42. GGP owed a duty to MRS. MANNINA to operate its business such that it was free from any unsafe conditions including the areas occupied by its retail tenants.

43. However, GGP breached its duties in the way that it operated its business, in multiple respects, including, without limitation by:

a. permitting the continued operation of retail tenants beneath structural ceiling components known to leak and deteriorate;

b. failing to implement reasonable inspection and preventive maintenance protocols for HVAC and ceiling systems;

c. failing to require correction of known hazardous conditions affecting business invitees of its tenants.

44. GGP’s mode of operation was negligent in that it created a foreseeable and recurring zone of risk to business invitees from falling water-damaged ceiling tiles caused by chronic HVAC leaks within the Premises under GGP's ownership and control.

45. Further, GGP had a duty of care which required it to take reasonable precautions to minimize or eliminate the likelihood of a dangerous condition arising in the first instance.

46. GGP operated its business in a manner that created a dangerous or unsafe condition by failing to take such precautions or by failing to ensure that any precautions taken were adequately and appropriately followed by itself, its tenants, and its staff.

47. GGP knew or should have known that its mode of operation, including the continued operation of the Mall with deficient HVAC and ceiling maintenance, made the occurrence of injuries from falling water-damaged ceiling tiles reasonably foreseeable, yet it failed to take reasonable corrective action, failed to alter its mode of operation, and failed to warn invitees of the recurring danger.

48. As a direct and proximate result of GGP’s negligent mode of operation, MRS. MANNINA suffered bodily injury, resulting in great physical pain and suffering, disability, disfigurement, scarring, inability and loss of the capacity to lead and enjoy a normal life, loss of or diminution of earnings or earning capacity, expense of

hospitalization, medical and nursing care and treatment, aggravation of an existing disease or physical defect, permanent injury within a reasonable degree of medical probability, medical and related expenses in the past and in the future incurred in seeking a cure for her injuries. The losses are either permanent or continuing and MRS. MANNINA will suffer them in the future.

WHEREFORE, the Plaintiff, SUZANNE MANNINA, demands judgment for damages and costs against Defendant, GGP SERVICES INC. f/k/a BROOKFIELD PROPERTIES RETAIL INC., plus any additional relief this Court may deem just and proper.

**COUNT VI – ANTONIO MANNINA'S LOSS OF CONSORTIUM CLAIM AGAINST DEFENDANT, GGP SERVICES INC. f/k/a BROOKFIELD PROPERTIES RETAIL INC.**

MR. MANNINA, hereby repeats and realleges the allegations contained in paragraphs one (1) through thirteen (13) above, incorporates them as if set forth fully herein, and further alleges:

49. At all times material hereto, MR. MANNINA, was legally married to the plaintiff, SUZANNE MANNINA, and was entitled to the services, society, companionship, comfort, consortium, affection, and support of his wife.

50. As a direct and proximate result of the negligence of GGP as more fully described in the preceding paragraphs, MRS. MANNINA, suffered serious injuries, including a traumatic brain injury, concussion, persistent post-concussive symptoms, chronic headaches and migraines, dizziness, light sensitivity, cognitive impairment, and related sequelae.

51. As a further direct and proximate result of GGP's negligence and the injuries sustained by his wife, MR. MANNINA, has been deprived, and will continue to be deprived, of her services, society, companionship, comfort, consortium, affection, sexual relations, and

support.

52. As a further direct and proximate result of GGP's negligence, MR. MANNINA, has incurred and will continue to incur expenses in connection with his wife's medical care and treatment, and has been required to assume additional responsibilities in the care of their household and their two minor children, whose care and upbringing had previously been shared with his wife.

53. The losses suffered by MR. MANNINA, are either permanent or continuing in nature, and he will continue to suffer such losses in the future.

WHEREFORE, Plaintiff, ANTONIO MANNINA, demands judgment for damages and costs against Defendant, GGP SERVICES INC. f/k/a BROOKFIELD PROPERTIES RETAIL INC., plus any additional relief this Court may deem just and proper.

**COUNT VII– SUZANNE MANNINA'S NEGLIGENCE CLAIM AGAINST DEFENDANT GENERAL GROWTH MANAGEMENT, INC.**

MRS. MANNINA hereby repeats and realleges the allegations contained in paragraphs one (1) through thirteen (13) above, incorporates them as if set forth fully herein, and further alleges:

54. At all times material hereto, GENERAL owned, operated, managed, and/or controlled the Mall, and was responsible for the management, inspection, maintenance, and repair of the common areas, structural ceiling assemblies, and HVAC systems serving the retail tenant spaces within the Mall, including the Premises.

55. GENERAL owed MRS. MANNINA, as a business invitee, a duty to maintain the Premises in a reasonably safe condition and to correct or warn of any known dangerous conditions.

56. GENERAL negligently maintained the Premises, by failing to use reasonable care in

keeping the Premises in a reasonably safe condition that would prevent it from being dangerous and unsafe for business invitees like MRS. MANNINA.

57. At all relevant times, the ceiling, and specifically, the water-damaged ceiling tile constituted a dangerous and hazardous condition.

58. This negligent condition referenced above was known to GENERAL or had existed for a sufficient length of time so that GENERAL should have known of it.

59. GENERAL breached its duty of care to MRS. MANNINA by failing to do one or more of the following, without limitation:

    a. To use ordinary care and diligence to maintain the Premises in a condition reasonably safe for its intended use and free from all defects and conditions which would render it dangerous and unsafe to MRS. MANNINA or present an unreasonable risk of harm to her;

    b. To exercise reasonable care to protect MRS. MANNINA from any dangerous conditions by inspecting and/or using any other means to create a safe environment on and about the Premises;

    c. To properly warn MRS. MANNINA of any dangerous or unsafe conditions existing on or about the Premises;

    d. To install any barriers blocking customer access to any areas known to be dangerous or unsafe;

    e. To properly hire, train and supervise its agents, tenants, servants and employees, to assure the prompt removal of hazards, and other dangerous conditions at the Premises, and to adequately and timely warn invitees, such as MRS. MANNINA of that condition;

f. To correct dangerous ongoing conditions such as the one at issue in this case.

60. As a direct and proximate result of GENERAL's negligent acts or omissions, MRS. MANNINA suffered bodily injury, resulting in great physical pain and suffering, disability, disfigurement, scarring, inability and loss of the capacity to lead and enjoy a normal life, loss of or diminution of earnings or earning capacity, expense of hospitalization, medical and nursing care and treatment, aggravation of an existing disease or physical defect, permanent injury within a reasonable degree of medical probability, medical and related expenses in the past and in the future incurred in seeking a cure for her injuries. The losses are either permanent or continuing and MRS. MANNINA will suffer them in the future.

WHEREFORE, the Plaintiff, SUZANNE MANNINA, demands judgment for damages and costs against Defendant, GENERAL GROWTH MANAGEMENT, INC., plus any additional relief this Court may deem just and proper.

**COUNT VI – SUZANNE MANNINA'S NEGLIGENT MODE OF OPERATION CLAIM AGAINST DEFENDANT GENERAL GROWTH MANAGEMENT, INC.**

MRS. MANNINA hereby repeats and realleges the allegations contained in paragraphs one (1) through thirteen (13) above, incorporates them as if set forth fully herein, and further alleges:

61. At all times material hereto, GENERAL owned, operated, managed, and/or controlled the Mall, and was responsible for the management, inspection, maintenance, and repair of the common areas, structural ceiling assemblies, and HVAC systems serving the retail tenant spaces within the Mall, including the Premises.

62. GENERAL owed a duty to MRS. MANNINA to operate its business such that it was free from any unsafe conditions including the areas occupied by retail tenants.

63. However, GENERAL breached its duties in the way that it operated its business, in multiple respects, including, without limitation by:

    a. permitting the continued operation of retail tenants beneath structural ceiling components known to leak and deteriorate;

    b. failing to implement reasonable inspection and preventive maintenance protocols for HVAC and ceiling systems;

    c. failing to require correction of known hazardous conditions affecting business invitees of its tenants.

64. GENERAL's mode of operation was negligent in that it created a foreseeable and recurring zone of risk to business invitees from falling water-damaged ceiling tiles caused by chronic HVAC leaks within the Premises under GENERAL's management and control.

65. Further, GENERAL had a duty of care which required it to take reasonable precautions to minimize or eliminate the likelihood of a dangerous condition arising in the first instance.

66. GENERAL operated its business in a manner that created a dangerous or unsafe condition by failing to take such precautions or by failing to ensure that any precautions taken were adequately and appropriately followed by itself, the Mall tenants, and its staff.

67. GENERAL knew or should have known that its mode of operation, including the continued operation of the Mall with deficient HVAC and ceiling maintenance, made the occurrence of injuries from falling water-damaged ceiling tiles reasonably foreseeable, yet it failed to take reasonable corrective action, failed to alter its mode of operation, and failed to warn invitees of the recurring danger.

68. As a direct and proximate result of GENERAL's negligent mode of operation, MRS. MANNINA suffered bodily injury, resulting in great physical pain and suffering, disability, disfigurement, scarring, inability and loss of the capacity to lead and enjoy a normal life, loss of or diminution of earnings or earning capacity, expense of hospitalization, medical and nursing care and treatment, aggravation of an existing disease or physical defect, permanent injury within a reasonable degree of medical probability, medical and related expenses in the past and in the future incurred in seeking a cure for her injuries. The losses are either permanent or continuing and MRS. MANNINA will suffer them in the future.

WHEREFORE, the Plaintiff, SUZANNE MANNINA, demands judgment for damages and costs against Defendant, GENERAL GROWTH MANAGEMENT, INC., plus any additional relief this Court may deem just and proper.

**COUNT VI – ANTONIO MANNINA'S LOSS OF CONSORTIUM CLAIM AGAINST DEFENDANT, GENERAL GROWTH MANAGEMENT, INC.**

MR. MANNINA, hereby repeats and realleges the allegations contained in paragraphs one (1) through thirteen (13) above, incorporates them as if set forth fully herein, and further alleges:

69. At all times material hereto, MR. MANNINA, was legally married to the plaintiff, SUZANNE MANNINA, and was entitled to the services, society, companionship, comfort, consortium, affection, and support of his wife.

70. As a direct and proximate result of the negligence of GENERAL as more fully described in the preceding paragraphs, MRS. MANNINA, suffered serious injuries, including a traumatic brain injury, concussion, persistent post-concussive symptoms, chronic headaches and migraines, dizziness, light sensitivity, cognitive impairment, and related

sequelae.

71. As a further direct and proximate result of GENERAL's negligence and the injuries sustained by his wife, MR. MANNINA, has been deprived, and will continue to be deprived, of her services, society, companionship, comfort, consortium, affection, sexual relations, and support.

72. As a further direct and proximate result of GENERAL's negligence, MR. MANNINA, has incurred and will continue to incur expenses in connection with his wife's medical care and treatment, and has been required to assume additional responsibilities in the care of their household and their two minor children, whose care and upbringing had previously been shared with his wife.

73. The losses suffered by MR. MANNINA, are either permanent or continuing in nature, and he will continue to suffer such losses in the future.

WHEREFORE, Plaintiff, ANTONIO MANNINA, demands judgment for damages and costs against Defendant, GENERAL GROWTH MANAGEMENT, INC., plus any additional relief this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiffs, SUZANNE MANNINA and ANTONIO MANNINA, demand trial by jury on all issues so triable as a matter of right.

**COLINA LAW, PLLC**
*Attorneys for Plaintiff*

*/s/ Mary A.Colina- Fowler*

MARY A. COLINA-FOWLER, ESQ.
FBN: 121515
Colina Law, PLLC
Counsel for Plaintiff
5290 Golden Gate Parkway, #3
Naples, FL 34116
Tel: (239) 277-2088
Fax: (239) 610-1187
Email: mcolina@colina.law
Secondary: bthomas@colina.law